# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

**WILLIAM CLENDENNING, et al.,**

          **Plaintiffs,**

-v-

**NEWPAGE CORPORATION, et al.,,**

          **Defendants.**

**Case No. 3:09-cv-493**

**Judge Thomas M. Rose**

---

**ENTRY AND ORDER OVERRULING PLAINTIFFS' MOTION FOR LEAVE TO FILE REVISED SECOND AMENDED COMPLAINT (Doc. #26); GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. #14) AND TERMINATING THIS CASE**

---

This matter comes now before the Court on Plaintiffs' Motion for Leave To File Revised Second Amended Complaint. (Doc. #26). Plaintiffs' Amended Complaint was filed on February 2, 2010.[1] (Doc. #8.) Five days later on February 7, 2010, the Plaintiffs filed a Motion for Leave To File Second Amended Complaint which was initially denied due to failure to comply with Local Rule 7.3(b). (Doc. #9.) One day later, the Plaintiffs filed an Amended Motion for Leave To File Second Amended Complaint that did comply with Local Rule 7.3(b). The proposed

---

[1]Plaintiffs' Amended Complaint does not name NPWSI or the NPWSI Retiree Health Plan as defendants. On January 29, 2010, NPWSI and the NPWSI Retiree Health Plan filed a declaratory judgment action against the Plaintiffs in this matter in the Western District of Wisconsin. The Wisconsin suit was dismissed on July 16, 2010. The district judge found that the court lacked subject matter jurisdiction over the ERISA claim for declaratory relief and declined to exercise subject matter jurisdiction over the LMRA claim. The judge concluded that, "[i]f the Ohio court determines that it does not have jurisdiction or that venue is improper, it may decide to transfer the case to this district or in the alternative, dismiss the case allowing the union and retirees to refile the case here." *NewPage Wisconsin System, Inc. v. United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC*, No. 100-cv-41-bbc, 2010 U.S. Dist LEXIS 71511 at *30 (W.D. Wisc. July 16, 2010).

Revised Second Amended Complaint seeks to add NewPage Wisconsin Systems, Inc.

("NPWSI") and the NPWSI Retiree Health Plan as Defendants. On February 12, 2010, the

Defendants filed a Motion To Dismiss the Amended Complaint.[2] (Doc. # 14.)

On May 3, 2010, the Court entered an Order that deferred ruling on Plaintiffs' pending

Amended Motion for Leave To File Second Amended Complaint. (Doc. #22.) Ruling was

deferred pending limited discovery and further briefing on the issue of whether the Court could

exercise personal jurisdiction over the two defendants that Plaintiffs sought to add in their

proposed Revised Second Amended Complaint.

The Parties then conferred with the Court via telephone regarding discovery and briefing.

On May 21, 2010, an Agreed Order was entered that permitted discovery on the issue of personal

jurisdiction and established dates for further briefing. (Doc. #24.) Plaintiffs were granted leave to

file an amended motion for leave to file a proposed second amended complaint or a brief that

addresses the personal jurisdiction issue. Defendants were to then file a response and Plaintiffs a

reply.

The time set forth in the Agreed Order has run and the Plaintiffs have elected to file a

Motion for Leave To File Revised Second Amended Complaint. (Doc. #26.) This Motion is now

fully briefed and ripe for decision. Before addressing Plaintiffs' Motion, a description of the

entities involved will first be set forth followed by the relevant legal provisions and an analysis

of the Motion.

### THE PLAINTIFFS

---

[2]The Motion To Dismiss addresses the dismissal of NewPage and the NewPage
Corporation Welfare Benefit Plan. It does not address dismissal of NPWSI or the NPWSI Retiree
Health Plan.

The proposed Revised Second Amended Complaint is an alleged class action.[3] (Doc. #8.) The named Plaintiffs are William Clendenning ("Clendenning"), Doug Allen ("Allen"), Robert Woods ("Woods") and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW"). The Plaintiffs for the proposed Revised Second Amended Complaint are the same as the Plaintiffs for the Second Amended Complaint.

## THE DEFENDANTS

The Defendants named in the caption of the proposed Revised Second Amended Complaint are NewPage Corporation ("NewPage"), NPWSI, the NewPage Corporation Welfare Benefit Plan and the NPSWI[4] Retiree Health Plan.[5] Does 1 through 20 are also identified as Defendants but have not yet been further identified.

In the proposed Revised Second Amended Complaint, the Defendants assert that they are making claims against the NewPage Corporation Master Welfare Plan and the NPWSI Retiree Health Plan and that these two plans are collectively referred to in the proposed Revised Second Amended Complaint as "the Plan." While the Court may logically consider the NewPage Corporation Welfare Benefit Plan identified in the caption and the NewPage Corporation Master Welfare Plan identified in the body of the proposed Revised Second Amended Complaint to be

---

[3]The original Complaint was filed on December 24, 2009, and was amended on February 2, 2010, as a matter of course. The class action allegations have not yet been addressed.

[4]The Court assumes that the case caption includes a typographical error and that "NPSWI" should be "NPWSI."

[5]The case caption says the NPWSI Retiree Health Plan is a Defendant. The Complaint later expands this Defendant to be the NewPage Corporation Master Welfare Plan and the NPWSI Retiree Health Plan and collectively refers to these two entities as "the Plan."

one in the same, it cannot consider the NewPage Corporation Master Welfare Plan and the NPWSI Retiree Health Plan collectively without more. They will be separately considered.

The corporate Defendants are interrelated. The NewPage Holding Corporation owns all shares of NewPage. New Page is a Delaware Corporation with principal offices in Miamisburg, Ohio. NewPage owns all of the shares of NewPage Consolidated Papers, Inc. ("NewPage Consolidated"). NewPage Consolidated owns all of the shares of NPWSI. NPWSI is a Wisconsin Corporation with principal offices in Wisconsin Rapids, Wisconsin.

The NewPage Master Welfare Plan is an "employee benefit plan" within the meaning of ERISA and, according to the proposed Revised Second Amended Complaint, provides retiree health benefits to some or all of the Plaintiffs. NewPage is allegedly the sponsor of this plan and this plan is allegedly administered in Miamisburg, Ohio.

The NPWSI Retiree Health Plan is an "employee benefit plan" that provides retiree health benefits to some or all of the Plaintiffs. The address listed for the NPWSI Retiree Health Plan sponsor is in Miamisburg, Ohio.

NPWSI and the NPWSI Retiree Health Plan are not named as Defendants in the Amended Complaint. They are, however, named as Defendants in the proposed Revised Second Amended Complaint.

**THE PROPOSED REVISED SECOND AMENDED COMPLAINT**

The proposed Revised Second Amended Complaint brings two Counts. Count I of the Amended Complaint is brought by all of the Plaintiffs against all of the Defendants for violation of collective bargaining agreements ("CBAs") pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Count 2 of the Amended Complaint is brought by the

individual Plaintiffs only against all of the Defendants for violation of the NewPage Corporation

Master Welfare Plan and the NPWSI Retiree Health Plan pursuant to § 502(a)(1) and (a)(3) of

the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) and (a)(3).

The causes of action in the Amended Complaint and the proposed Revised Second Amended

Complaint are the same.

**RELEVANT LEGAL PROVISIONS**

Motions to amend complaints are considered under Fed. R. Civ. P. 15. Rule 15(a)

provides that a party may amend its complaint as a matter of course if certain conditions are

satisfied. Fed. R. Civ. P. 15(a). In this case, Plaintiffs have amended their Complaint once. Any

further amendment requires the opposing party's written consent or leave of court. Id.

Defendants have not given their written consent so Plaintiffs require leave of court to file the

proposed Revised Second Amended Complaint.

The purpose of Rule 15(a) is to reinforce the principle that cases should be tried on their

merits. *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)(citing *Tefft v. Seward*, 689

F.2d 637, 639 (6th Cir. 1982)). Thus, leave to amend a complaint should be "freely given when

justice so requires." Whether justice requires the amendment is committed to the trial court's

sound discretion. *Id.*(citing *Zenith Radio Corp. v. Hazeltine, Research, Inc.*, 401 U.S. 321

(1971)). However, discretion is abused when a district court fails to state a basis for its decision

to deny a motion to amend. *Rose v. Hartford Underwriters Insurance Co.*, 203 F.3d 417, 420

(6th Cir. 2000).

The factors that a district court should consider when deciding whether to grant leave to

amend include undue delay in filing, lack of notice to the opposing party, bad faith by the

-5-

moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of amendment. *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998), *cert. denied*, 528 U.S. 842 (1999). A proposed amendment is futile if the amendment could not withstand a motion to dismiss. *Rose*, 203 F.3d at 420; *Neighborhood Development Corp. v. Advisory Council On Historic Preservation, Dept. of Housing and Urban Development, City of Louisville*, 632 F.2d 21, 23 (6th Cir. 1980).

## ANALYSIS

Plaintiffs seek to amend their Amended Complaint to add NPWSI and the NPWSI Retiree Health Plan as Defendants. The Defendants argue that amendment of the Amended Complaint will be futile for various reasons.

The Plaintiffs do not now argue that NewPage and the NewPage Plan are proper parties. They do, however, argue that this Court has jurisdiction over their claims against NPWSI and the NPWSI Retiree Health Plan.

This Court determined that venue for Count II of the proposed Second Amended Complaint, the ERISA claim, lies in this district. Venue for Count I of the proposed Second Amended Complaint, the LMRA claim, turned on whether this Court has personal jurisdiction over NPWSI.

Regarding the previous Decision of this Court, Count II of the proposed Second Amended Complaint and Count II of the proposed Revised Second Amended Complaint are essentially the same. The Plaintiffs identified evidence that the sponsor of the NPWSI Retiree Health Plan was located in this district and the Defendants did not present any evidence to the contrary. (See doc. #22.) However, venue for the ERISA claim against the other Defendants was

not addressed.

Count I of the proposed Second Amended Complaint and Count I of the proposed Revised Second Amended Complaint are also essentially the same. The Court previously determined that venue for this claim turns on whether this Court can exercise personal jurisdiction over NPWSI.

The Plaintiffs complain that the additional briefing that is now before the Court was to be in regard to personal jurisdiction only. However, it is the Plaintiffs who have again elected to file a motion to amend their Amended Complaint and the Defendants still have a Motion To Dismiss pending that addresses at least some of the futility issues. Therefore, the Court will first examine the proposed Revised Second Amended Complaint with regard to the futility issues raised by the Defendants. The futility of bringing a claim against each of the Defendants will be addressed.

## NEWPAGE

The Defendants argue that granting leave to file the proposed Revised Second Amended Complaint against NewPage would be futile. The compliant against NewPage would be futile because NewPage is not subject to LMRA jurisdiction, because the ERISA claim also fails and because no basis exists to pierce the corporate veil between NewPage and NPWSI.

### LMRA Jurisdiction

The Defendants argue that jurisdiction for Plaintiffs LMRA claim against NewPage does not exist because NewPage was not a party to the Collective Bargaining Agreements ("CBAs") that Plaintiffs claimed to have been breached. The only argument offered by Plaintiffs regarding NewPage is that the corporate veil should be pierced to hold NewPage responsible.

To be within the jurisdictional reach of the LMRA, a party must have entered into a

collective bargaining agreement with the party bringing the claim. *See United Food and Commercial Workers Local 951, AFL-CIO and CLC v. Mulder*, 31 F.3d 365, 371 (6th Cir. 1994). In this case, NewPage is not a signatory to nor a successor to a signatory to any of the CBAs identified in the Amended Complaint and the proposed Revised Second Amended Complaint. (See Motion To Dismiss at 4-8, doc. #14.) And, the Plaintiffs have not presented evidence or argument otherwise. Therefore, this Court does not have jurisdiction to adjudicate an LMRA claim against NewPage unless Plaintiffs can show that NewPage and the signatories to the CBAs are alter egos, or constitute a single employer or the corporate veil should otherwise be pierced. *See Service, Hospital, Nursing Home and Public Employees Union, Local No. 47, Affiliated With Service Employees International Union, AFL-CIO v. Commercial Property Services, Inc.*, 755 F.2d 499, 504 (6th Cir. 1985).

### ERISA Jurisdiction

Neither the Amended Complaint nor the proposed Revised Second Amended Complaint assert an ERISA claim that is independent of the LMRA claim. Accordingly, the outcome of the LMRA claim determines the outcome of the ERISA claim. *Schreiber v. Phillips Display Components Co.*, 580 F.3d 355, 363 (6th Cir. 2009). Thus, because this Court does not have jurisdiction to adjudicate Plaintiffs' LMRA claim, it has no jurisdiction to adjudicate Plaintiffs' ERISA claim unless Plaintiffs can show that NewPage and the signatories to the CBAs are alter egos, or constitute a single employer or the corporate veil should be pierced.

### Piercing the Corporate Veil

The Defendants argue that there is no basis to pierce the corporate veil between NewPage and NPWSI. In their Memorandum In Support of their Motion for Leave To File Proposed

-8-

Revised Second Amended Complaint, the Plaintiffs argue that the corporate veil should be pierced because all of the officers and directors of NPWSI are employees, officers or directors of NewPage and NewPage has repeatedly held itself out to the public as the owner and operator of the Wisconsin facilities in question. Yet, in their Reply Memorandum, the Plaintiffs state that "there is no need to 'pierce the corporate veil' in this case…."

The Sixth Circuit has consistently held that state corporate-piercing law applies in diversity cases. However, this is not a diversity case. Jurisdiction here is predicated on federal questions. The Sixth Circuit has not directly ruled as to what corporate-piercing law applies to federal question cases.[6]

The Supreme Court has not ruled directly either. However, in *United States v. Bestfoods*, 524 U.S. 51 (1998), which was on appeal from the Sixth Circuit, the Supreme Court provided some guidance on the issue. In a case premised on federal question jurisdiction, the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), the Court first indicated that a general principle of corporate law is that a parent corporation is not liable for the acts of its subsidiaries. 524 U.S. at 61. However, the corporate veil may be pierced when the corporate form would otherwise be "misused to accomplish certain wrongful purposes, most notably fraud…." *Id.* at 62. The Supreme Court then went on to hold that, unless the federal law specifically speaks to piercing the corporate veil, state corporate-piercing law applies. *Id.*[7]

---

[6]The Sixth Circuit has applied federal veil-piercing law to an ERISA claim because it was reviewing a decision made in the D.C. Circuit and the D.C. Circuit applied federal veil-piercing law to ERISA claims at the time the trial-court decision was made. *Flynn v. Greg Anthony Construction Co., Inc.*, 95 Fed. App'x 726 (6th Cir. 2003).

[7]The Plaintiffs, in their Memorandum In Opposition to Defendants Motion To Dismiss, have cited an Eleventh Circuit case, rendered before *Bestfoods*, which applies federal veil-

In a case decided after *Bestfoods*, the Sixth Circuit, citing *Bestfoods*, applied Ohio veil-piercing law to a CERCLA case. *Carter-Jones Lumber Company v. Dixie Distributing Company*, 166 F.3d 840, (6th Cir. 1999); *see also, Donahey v. Bogle*, 129 F.3d 838, 843 (6th Cir. 1997)(applies state veil-piercing law to a CERCLA claim), *vacated on other grounds*, 524 U.S. 924 (1998).

This Court elects to follow the instructions of the Supreme Court. A parent corporation is not liable for the acts of it subsidiaries unless good reason exists to pierce the corporate veil. Further, this Court is not aware of provisions in the LMRA or ERISA which specifically speak to piercing the corporate veil and the Parties here have not identified any such provisions. Thus, state veil-piercing law, Ohio in this case, will be used.

Under Ohio law, a corporate veil will be pierced if a plaintiff shows:

> (1) the parent's control over the subsidiary was "so complete" that the subsidiary had "no separate mind, will, or existence of its own"; (2) the parent's exercise of control over the subsidiary amounted to "fraud or an illegal act" against the plaintiff; and (3) "injury or unjust loss resulted to the plaintiff from such control and wrong."

*Corrigan v. United States Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007)(quoting *Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos. Inc.*, 617 N.E.2d 1075 (Ohio 1993)). To determine whether the first prong of this test has been satisfied, Ohio courts have considered a variety of factors including: grossly inadequate capitalization, failure to observe corporate formalities, insolvency of the debtor corporation at the time the debt was incurred, the parent

---

piercing law to an LMRA claim. *United Steel Workers of America, AFL-CIO-CLC v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir. 1988). In two other cases issued before *Bestfoods*, the Eighth and Ninth Circuit applied their own federal veil-piercing law to an LMRA case. *Contractors, Laborers, Teamsters & Engineers Health and Welfare Plain v. Hroch*, 757 F.2d 184 (8th Cir. 1985); *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105 (9th Cir. 1979). The Defendants in this case have not argued whether state or federal veil-piercing law applies and have not cited cases regarding veil-piercing.

-10-

holding itself out as personally liable for certain subsidiary obligations, diversion of funds or other property of the subsidiary for the parent's use, the absence of corporate records and the fact that the subsidiary was a mere facade for the operations of the parent. *Id.* at 724. Finally, the burden of proof for demonstrating grounds for piercing the corporate veil is on the party seeking to pierce the corporate veil, the Plaintiffs in this case. *Id.*

No Separate Mind, Will or Existence

In this case, Plaintiffs offer no argument as to why the corporate veil between NewPage and NewPage Consolidated, NewPage's subsidiary, should first be pierced. For this reason alone, Plaintiffs have not met their burden of showing that NewPage's corporate veil should be pierced.

Plaintiffs do, however, offer argument that the corporate veil between NPWSI and NewPage should be pierced. No such direct corporate relationship exists. However, if there were one, Plaintiffs have not shown that it should be pierced.

Plaintiffs argue that NewPage's successors and the USW were parties to a series of labor contracts covering USW bargaining unit members at paper mills in Biron, Wisconsin; Stevens Point, Wisconsin; Wisconsin Rapids, Wisconsin; Whiting, Wisconsin; Niagara, Wisconsin; and Kimberly, Wisconsin. However, the public record demonstrates that NewPage is not the successor to the companies that negotiated these collective bargaining agreements.

The Plaintiffs identify evidence that four of the nine members of the NewPage senior leadership team are also directors or officers with NPWSI. However, the documents submitted by Plaintiffs identify at least two NPWSI officers, Dale Bikowski and Edwin Buehler, who are not NewPage officers or directors. Therefore, the officers and directors of NewPage and NPWSI do not completely overlap. Even if they did, overlapping management between a subsidiary and

-11-

a parent is not alone a sufficient basis to pierce the corporate veil. *Corrigan*, 478 F.3d at 726.

The Plaintiffs have not met their burden of proof to show that either NewPage Consolidated or NPWSI have no separate mind or existence from NewPage. No evidence or argument was presented regarding NewPage Consolidated, NewPage's immediate subsidiary. The evidence and argument presented regarding the relationship between NewPage and NPWSI discusses none of the factors to be considered and does not even present evidence of completely overlapping management. The Plaintiffs have not shown that NewPage's control over NPWSI is so complete that NPWSI had no "separate mind, will, or existence of its own."

The Plaintiffs have failed to satisfy the first prong of Ohio's veil-piercing test. Therefore, an analysis of the remaining two prongs is not necessary.

Neither LMRA nor ERISA jurisdiction over NewPage exist and Plaintiffs have not shown that NewPage's corporate veil should be pierced. Therefore, permitting NewPage to be named as a defendant in the proposed Revised Second Amended Complaint would be futile.

Further, assuming the well-pled factual allegations in the Amended Complaint to be true and based upon the above analysis which applies to the Amended Complaint, the Plaintiffs have not made a plausible claim against NewPage. NewPage is dismissed from the Amended Complaint.[8][9]

---

[8]In their Reply Memorandum, the Plaintiffs assert that, "[i]f Defendants believe in the fact of Plaintiffs' evidence and Defendants' own dearth of evidence that they can establish that NewPage Corp does not belong in this case, they may move to dismiss as to NewPage Corp once the complaint is filed." The Court assumes Plaintiffs are referring to the proposed Revised Amended Complaint because the Amended Complaint has been filed and Defendants have filed a Motion To Dismiss it.

[9]The Defendants have moved to dismiss NewPage from the Amended Complaint.

**NewPage Corporation Welfare Benefit Plan**

The futility analysis next turns to the NewPage Corporation Welfare Benefit Plan. In their Amended Complaint and proposed Revised Second Amended Complain, the Plaintiffs allege that their rights to retiree medical benefits were created through collective bargaining. But, as determined above, none of the collective bargains were with NewPage. Therefore, the Plaintiffs could not have received entitlement to a NewPage plan, specifically the NewPage Corporation Welfare Benefit Plan, through collective bargaining. Further, the named Plaintiffs do not allege in their proposed Revised Second Amended Complaint that they were receiving retiree health benefits from the NewPage Corporation Welfare Benefit Plan. Thus, none of the Plaintiffs have standing as a fiduciary, participant or beneficiary to assert any ERISA claim against the NewPage Corporation Welfare Benefit Plan. Most telling is Plaintiffs statement in their Reply Brief that, "[a]s for the NewPage Plan, Plaintiffs are willing to voluntarily dismiss this Defendant." Therefore, permitting the NewPage Corporation Welfare Benefit Plan to be named as a defendant in the proposed Revised Second Amended Complaint would be futile.

Further, assuming the well-pled factual allegations in the Amended Complaint to be true and taking Plaintiffs at their word, the Plaintiffs have not made a plausible claim against the NewPage Corporation Welfare Benefit Plan. Thus, the NewPage Corporation Welfare Benefit Plan is dismissed from the Amended Complaint.[10]

**NPWSI**

The futility analysis next turns to NPWSI. The Defendants argue that permitting

---

[10]The Defendants have moved to dismiss the NewPage Corporation Welfare Benefit Plan from the Amended Complaint.

Plaintiffs to file the proposed Revised Second Amended Complaint against NPWSI would be futile because this Court does not have personal jurisdiction over NPWSI. The Plaintiffs respond that this Court does have personal jurisdiction over NPWSI. Thus, the legal provisions regarding personal jurisdiction will first be set forth followed by an analysis of whether personal jurisdiction over NPWSI would exist in this district.

### Relevant Legal Provisions Regarding Personal Jurisdiction

When personal jurisdiction is challenged, as is the case here, the plaintiff has the burden of proving that jurisdiction exists. *Burnshire Development, LLC v. Cliffs Reduced Iron Corp.*, 198 Fed. App'x 425, 429 (6th Cir. 2006)(citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996)). As a part of the burden of proof, the plaintiff's burden of persuasion depends upon whether the court conducts an evidentiary hearing.

When an evidentiary hearing is held, the Plaintiff must establish jurisdiction by a preponderance of the evidence. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). When there is no evidentiary hearing, as is the case here, the plaintiff must make only a prima facie showing and the pleading and affidavits, when in conflict, are viewed in a light most favorable to the plaintiff. *Burnshire*, 198 Fed. App'x at 429.

The Sixth Circuit applies a two-part test to determine if personal jurisdiction exists. *Logan Farms v. HBH, Inc. DE*, 282 F. Supp.2d 776, 795 (S.D. Ohio 2003). First, the federal court must determine if the law of the forum state, Ohio in this case, provides for personal jurisdiction. *Nationwide Mutual Insurance Co. v. Tryg International Insurance Co.*, Ltd., 91 F.3d 790, 793 (6th Cir. 1996). If so, the federal court must then determine if the exercise of personal jurisdiction comports with due process. *Id.*

-14-

### Personal Jurisdiction Under Ohio Law

The Sixth Circuit has explained that there are two kinds of personal jurisdiction that can be exercised, general jurisdiction and specific jurisdiction. *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006). General jurisdiction exists when the defendant's contacts with the forum state are "substantial" and "continuous and systematic," such that the state may exercise personal jurisdiction even if the action does not relate to the defendant's contacts with the state. *Youn*, 324 F.3d at 418. Specific jurisdiction exists when the contacts giving rise to jurisdiction relate to the claim that is before the court. *Id.*

Ohio does not recognize general jurisdiction over nonresidents. *Signom v. Schenck Fuels, Inc.*, No. C-3-07-037, 2007 WL 1726492 at *3 (S.D. Ohio June 13, 2007). In Ohio, jurisdictional analysis over nonresidents is based only upon specific jurisdiction that may be available under Ohio law. *Id.* In fact, the Supreme Court of Ohio has only applied Ohio's long-arm statute to determine personal jurisdiction over nonresidents. *Goldstein v. Christiansen*, 638 N.E.2d 541, 543 (Ohio 1994).

The Plaintiffs cite two cases for their proposition that Ohio uses general jurisdiction for nonresidents. Neither are persuasive. In *Kauffman Racing Equipment, L.L.C. v. Roberts*, 930 N.E.2d 784 (Ohio 2010), the Ohio Supreme Court said that personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state. *Id.* at 792. The Ohio Supreme Court further described when general jurisdiction is proper citing *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) which was citing *Third National Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087 (6th Cir. 1989), *cert. denied*, 493 U.S. 1058 (1990) . However, in *Third National Bank*, the Sixth Circuit was analyzing personal

jurisdiction in Tennessee which permits general jurisdiction over nonresidents. The Ohio Supreme Court did not specifically indicate that general jurisdiction over nonresidents exists in Ohio, and went on to apply Ohio's long arm statute which considers specific jurisdiction.

In *Estate of Thompson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357 (6th Cir. 2008), the Sixth Circuit says that jurisdiction under Ohio law may be specific or general. However, in *Thompson*, the Sixth Circuit is relying upon *Tryg*, 91 F.3d 790. The panel in *Tryg* went on to address and find specific jurisdiction under Ohio's long-arm statute and no further mention was made of general jurisdiction. *Id.* In the section cited in *Tryg*, the Sixth Circuit held that a valid assertion of personal jurisdiction must satisfy both the state long-arm statute, and constitutional due process." *Id.* at 793.

In Ohio, specific jurisdiction over nonresidents is provided by Ohio's Long-Arm Statute, Ohio Rev. Code § 2307.382, and Plaintiffs have not identified any caselaw in which an Ohio court is applying anything but Ohio's Long-Arm Statute to nonresident corporations to determine personal jurisdiction.[11] Ohio's Long-Arm Statute enumerates nine (9) categories of conduct that subject a nonresident entity to personal jurisdiction in Ohio if a cause of action arises out of such conduct. *Shaker Construction Group, LLC v. Schilling*, No. 1:08cv278, 2008 WL 4346777 at *2 (S.D. Ohio Sept. 18, 2008). Ohio's Long-Arm Statute, Ohio. Rev. Code § 2307.382, provides for personal jurisdiction over nonresidents as follows:

---

[11]The Plaintiffs identify *Price v. Wheeling Dollar Savings & Trust Co.*, 460 N.E.2d 264 (Ohio Ct. App. 1983), as the basis for their argument that NPWSI is subject to general jurisdiction in Ohio. In *Price*, Ohio's Twelfth District Court of appeals found that having a license to do business in Ohio is, *per se*, sufficient evidence upon which to conclude that a company has the necessary minimum contacts in Ohio. 460 N.E.2d at 269. However, the Price Court was addressing out-of-state service of a summons under Ohio Rule of Civil Procedure 4.3 and not federal personal jurisdiction.

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

    (1) Transacting any business in this state;

    (2) Contracting to supply services or goods in this state;

    (3) Causing tortious injury by an act or omission in this state;

    (4) Causing tortious injury in this state by an act or omission outside the state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

    (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

    (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

    (7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity;

    (8) Having an interest in, using or possessing real property in this state;

    (9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(B) For purposes of this section, a person who enters into an agreement, as a principal, with a sales representative for the solicitation of orders in this state is transacting business in this state. As used in this division, "principal" and "sales representative" have the same meanings as in section 1335.11 of the Revised Code.

(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted

against him.

## Federal Due Process

The Sixth Circuit has established a three part test for determining whether personal jurisdiction under Ohio's Long-Arm Statute comports with the Due Process Clause. *Burnshire*, 198 Fed. App'x 430 (6th Cir. 2006) (citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). First, the defendant must purposely avail himself of the privilege of acting in Ohio or causing a consequence in Ohio. *Id.* Second, the cause of action must arise from the defendant's activities in Ohio. *Id.* Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with Ohio to make the exercise of jurisdiction over the defendant reasonable. *Id.*

### "Purposeful Availment"

The purposeful availment prong of the constitutional analysis is coextensive with the "transacting any business" standard of Ohio's Long-Arm Statute. *Id.* at 432. Identical standards are used to interpret the "transacting any business" standard of Ohio's Long-Arm Statute and the "purposeful availment" prong of the constitutional standard. *Id.*

### "Arising From"

The "arising from" prong requires only that the cause of action have a substantial connection with the defendant's activities in Ohio. *Genesis Insurance Co. v. Alfi*, 425 F. Supp. 2d 876, 893 (S.D. Ohio 2006). However, the Sixth Circuit has found that the requirement that contacts be the proximate cause of the asserted harm under Ohio's Long-Arm Statute is more restrictive than the but for "arising from" standard applicable to the Due Process analysis. *Burnshire*, 198 Fed. App'x 430 n.2.

-18-

"Substantial Connection"

The "substantial connection" prong requires that the acts of the defendant or the consequences caused by the Defendants must have a substantial enough connection with Ohio to make the exercise of jurisdiction over the Defendants reasonable. *Genesis*, 425 F. Supp.2d at 893 (citing *Southern Machine*, 401 F.2d at 384)). However, then the first two prongs of the Due Process analysis are satisfied, "an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *Id.* (citing *First National Bank of Louisville v. J. W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982)). Factors considered under the "substantial connection" prong include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,  477 (1985)). Finally, most of these considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. *Id.*

The facts relevant to the exercise of personal jurisdiction by this Court over NPWSI will first be set forth followed by an analysis of Ohio's long-arm statute with regard to these facts. However, facts related to piercing NewPage's corporate veil will not again be presented because this Court has already decided that Plaintiffs have not shown that NewPage's corporate veil should be pierced.

### Relevant Jurisdictional Facts

NPWSI is a Wisconsin corporation with its principal offices in Wisconsin Rapids,

Wisconsin. NPWSI is wholly-owned by NewPage Consolidated.

In its 2009 Annual Report filed with the State of Wisconsin, NPWSI identifies its address as being in Madison, Wisconsin, and its principal office address as being in Miamisburg. Ohio. Further, the address for all of NPWSI's officers and directors is listed as Miamisburg, Ohio. Also, since approximately December 21, 2007, stock registers and stock certificates for NPWSI have been located in Miamisburg, Ohio.

NPWSI has also registered in Ohio as a foreign, for-profit corporation. The registration indicates that NPWSI is incorporated under the laws of Wisconsin and lists Wisconsin Rapids, Wisconsin as the corporations principal office. Its principal office within Ohio is listed as being in Miamisburg. Finally, in the registration, NPWSI says it proposes to exercise any lawful activity in Ohio and began transacting business in Ohio on December 21, 2007. CT Corporation System in Cleveland, Ohio, is listed as NPWSI's statutory agent in Ohio.

NPWSI and the USW have been parties to a series of labor contracts covering USW bargaining-unit members at mills in Biron, Wisconsin; Stevens Point, Wisconsin; Wisconsin Rapids, Wisconsin; Whiting, Wisconsin; Niagara, Wisconsin and Kimberly, Wisconsin. As part of the negotiations, NPWSI and the USW negotiated retiree health benefits that were included in the collective bargaining agreements.

Plaintiff Clendenning is a resident of Wisconsin Rapids, Wisconsin. Allen is a resident of Kingsford, Michigan. Woods is a resident of Sun City West, Arizona. USW is a labor organization headquartered in Pittsburgh, Pennsylvania.

In early 2008, Glen Grill ("Grill"), the Director of Compensation and Benefits for NewPage, began a review of the health care insurance programs for NPWSI retirees from his

office in Miamisburg, Ohio. At the time, Grill reported to Michael Edicola ("Edicola"), who, among other things, was the Vice President of Human Resources for NPWSI. Edicola was also based in Ohio.

During June and July of 2008, Grill and NPWSI Director of Labor Relations William Smith ("Smith") made presentations regarding retiree medical options to the NewPage senior leadership team in Miamisburg, Ohio. Four of the nine members of the NewPage senior leadership team also held director or officer positions with NPWSI. The NewPage senior leadership team decided not to eliminate the post-65 health care subsidy at that time.

In the summer of 2009, Grill updated his analysis regarding the NPWSI post-65 health care benefits. In September of 2009, Grill presented the results to the NewPage senior leadership team who then decided to phase out the employer contribution to the health care premiums for Plaintiffs.

After discussing the issue with the USW, Grill, Amber Garwood ("Garwood"), who was NewPage's Vice President of Communications, and AmWINS, the NPWSI Plan's third-party administrator, were principally responsible for developing and executing a communications plan. Grill and Garwood did their work from NewPage's Miamisburg, Ohio offices.

In November of 2009, NPWSI publicly announced that it intended to phase out its contribution to the health care premiums for retirees and spouses age 65 and older by 2012. The letter announcing the change to the NPWSI retirees was sent by NPWSI from NPWSI's Wisconsin Rapids, Wisconsin, principal office.

### Personal Jurisdiction Analysis

NPWSI is a nonresident of Ohio. Thus, the Court must look to Ohio's Long-Arm Statute

to determine if it has personal jurisdiction over NPWSI.

Personal jurisdiction under Ohio's Long-Arm Statute exists if NPWSI acts directly as to a cause of action enumerated in the Long-Arm Statute. However, when jurisdiction is based upon the Long-Arm Statute, only a cause of action arising from the acts enumerated in the Long-Arm Statute may be asserted against NPWSI.

There is evidence, from the Ohio foreign, for-profit registration and from the mailing addresses of all of NPWSI's officers and directors that NPWSI is transacting business in Ohio. However, there is not evidence that the business that NPWSI was or is transacting in Ohio resulted in the causes of action brought by Plaintiffs for LMRA and ERISA violations. In other words, there is not evidence that the causes of action brought by Plaintiffs in the proposed Revised Amended Complaint arise from acts committed by NPWSI in Ohio.

None of the named Plaintiffs reside in Ohio.[12] The labor agreements that form the basis of the alleged LMRA violations were all negotiated outside of Ohio. The plants where the Plaintiffs worked and allegedly accrued the LMRA violations are all outside of Ohio.

Plaintiffs provide evidence that NPWSI's decision to phase out its contribution to the health care premiums for retirees and spouses took place in Ohio. However, Ohio's Long-Arm Statute is not based upon where decisions are made.

Plaintiffs have not met their burden of making a prima facie case that this Court has personal jurisdiction over NPWSI. Thus, their proposed Revised Second Amended Plaintiff would be futile to the extent it is against NPWSI.

_____

[12]Grill reports that an NPWSI retiree receiving retiree health benefits, who is possibly a class member, resides in Ohio. (Affidavit of Glenn Grill ("Grill Aff.") ¶ 5 Aug. 27, 2010.)

## NPWSI RETIREE HEALTH PLAN

The futility analysis next turns to the NPWSI Retiree Health Plan. The Defendants argue that permitting Plaintiffs to file the proposed Revised Second Amended Complaint against the NPWSI Health Plan would be futile because the NPWSI Health Plan was not a party to the CBAs that form the basis for the LMRA complaint and because this Court does not have personal jurisdiction over the NPWSI Retiree Health Plan. The Plaintiffs respond that this Court does have personal jurisdiction over the NPWSI Retiree Health Plan.

The legal provisions regarding personal jurisdiction are as set forth above. The relevant jurisdictional facts will next be set forth followed by an analysis of the Parties' arguments.

### Relevant Jurisdictional Facts

The NPWSI Retiree Health Plan was not a party to the CBAs that form the basis for Plaintiffs' LMRA claim. The Plaintiffs do not present evidence otherwise.

A Form 5500 filed by the NPWSI Retiree Health Plan lists NPWSI as the plan sponsor and 8540 Gander Creek Drive, Miamisburg, Ohio as the plan sponsor's address. The Form 5500 also identifies Grill as the individual signing as the plan administrator. Finally, the Form 5500 identifies NPWSI as the plan administrator and provides Miamisburg, Ohio as the plan administrator's address.[13]

Grill, who is among other things, the chairperson of the named fiduciary for NPWSI's benefit plans avers that the day-to-day administration of the NPWSI Retiree Health Plan is handled by AmWins, a Rhode Island-based third-party administrator and Michelle Pleet ("Pleet"), a Wisconsin-based benefits specialist. (Grill Aff. ¶¶ 1- 2 Aug. 27, 2010.) Also,

---

[13]The plan administrator is identified to be the same as the plan sponsor.

according to Grill, Wisconsin retirees present issues regarding eligibility, enrollment, changes and payment of premiums to AmWINS for resolution. (Id. ¶ 3.) Issues regarding eligibility for the NPWSI Retirees Health Plan are directed to Pleet in Wisconsin. (Id. ¶ 3.) Pleet, according to Grill, is the company administrator of the plan. (Id.) According to Grill, only settlor functions, such as establishing or amending the terms of the NPWSI Retiree Health Plan are performed in Ohio. (Id. ¶ 4.) Finally, the letter terminating the benefits was sent from NPWSI's home office in Wisconsin.

## Personal Jurisdiction Analysis

Plaintiffs' LMRA claim against the NPWSI Retiree Health Plan is subject to dismissal because the NPWSI Retiree Health Plan was not a party to an CBA upon which Plaintiffs base their LMRA claim. As set forth above, to be within the jurisdictional reach of the LMRA, a party must have entered into a collective bargaining agreement with the party bringing the claim. *See Mulder*, 31 F.3d at 371. The analysis then turns to personal jurisdiction for the ERISA claim over the NPWSI Retiree Health Plan.

The Plaintiffs seek to sue the NPWSI Retiree Health Plan for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and (a)(3). ERISA provides that an employee benefit plan may be sued as an entity and service upon a trustee or an administrator of the plan constitutes service upon the plan. 29 U.S.C. § 1132(d)(1). Further, an ERISA action may be brought in a district court in the district where the plan is administered, where the breach took place or where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2). *See Medical Mutual of Ohio v. deSoto*, 245 F.3d 561, 567 (6th Cir. 2001)(In ERISA, Congress conferred nationwide personal jurisdiction under § 1132(e)(2) on the district court where the plan is administered).

-24-

In this case, the breach of the CBAs which led to the ERISA claim allegedly took place in Wisconsin. Further, the evidence is that the NPWSI Retiree Health Care Plan may be found at NPWSI's principal office in Wisconsin Rapids, Wisconsin. Therefore, whether or not the NPWSI Retiree Health Plan is subject to personal jurisdiction in this district turns on whether the NPWSI Retiree Health Plan is administered in this district.

ERISA defines the term "administrator" to mean "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(I). If an administrator is not so designated, the plan sponsor is the plan administrator. 29 U.S.C. § 1002(16)(A)(ii). Where a plan administrator is not designated and a sponsor cannot be identified, "such other person as the Secretary may by regulation prescribe" is the plan administrator. 29 U.S.C. § 1002(16)(A)(iii).  The plan sponsor is, for single-employer plans, the employer. 29 U.S.C. § 1002(16)(B)(I).

In this case, Plaintiffs have presented evidence that NPWSI is the plan administrator. However, as set forth above, NPWSI is located in Wisconsin and is not subject to personal jurisdiction in this district.

The Plaintiffs have the burden to show that this Court has personal jurisdiction over the NPWSI Retiree Health Plan and have not done so. Therefore, Plaintiffs' claim against the NPWSI Retiree Health Plan would be futile.

The ERISA claim against the NPWSI Retiree Health Plan would fail for another reason also. Neither the Amended Complaint nor the proposed Revised Second Amended Complaint assert an ERISA claim that is independent of the LMRA claim. Accordingly, the outcome of the LMRA claim determines the outcome of the ERISA claim. *Schreiber*, 580 F.3d at 363. Thus,

because this Court does not have jurisdiction to adjudicate Plaintiffs' LMRA claim against the NPWSI Retiree Health Plan, it has no jurisdiction to adjudicate Plaintiffs' ERISA claim against the NPWSI Retiree Health Plan.

### CONCLUSION

Amending the Amended Complaint would be futile because this Court does not have personal jurisdiction over NPWSI or the NPWSI Retiree Health Plan. Also, this Court does not have subject matter jurisdiction over Plaintiffs' LMRA claim against the NPWSI Retiree Health Plan. Therefore, Plaintiffs Motion for Leave To File Revised Second Amended Complaint (doc. #26) is OVERRULED. The Amended Complaint remains.

Also pending and fully briefed is a Motion To Dismiss the Amended Complaint. (Doc. #14.) This Motion is GRANTED. This Motion is granted because NewPage is not subject to LMRA jurisdiction, because the ERISA claim against NewPage also fails and because no basis exists to pierce the corporate veil between NewPage and NPWSI. In addition, the Plaintiffs have not presented a plausible claim against the NewPage Corporation Welfare Benefit Plan.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton. As the District Court for the Western District of Wisconsin has said, this Court may dismiss the case allowing the union and retirees to refile the case in the Western District of Wisconsin.

**DONE and ORDERED** in Dayton, Ohio this Twelfth Day of October, 2010.

**s/Thomas M. Rose**

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record